# IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                              No. CIV 02-958 JP/LFG
                                   No. CR 00-10 JP

JOLENE GIRON,

        Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence brought by Movant Jolene Giron ("Giron") under 28 U.S.C. § 2255. [Doc. 1.] The government opposes Giron's § 2255 petition and requests that the Court deny the petition without an evidentiary hearing. [Doc. 4.] No further pleadings were filed in this case. For the reasons given below, the Magistrate Judge finds that the files and records of the case conclusively show that Giron is not entitled to any relief under her § 2255 petition and recommends that the petition be dismissed, without an evidentiary hearing.

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

2.      Giron pled guilty to the Indictment that charged her with possession with intent to distribute 20.9 pounds of cocaine in violation of 21 U.S.C. § 841(a)(1).  Judgment was entered on October 4, 2001, and Giron was sentenced to a period of 10 years' imprisonment.

3.      As grounds for review, Giron generally asserts that her guilty plea was not voluntary due to ineffective assistance of attorney Albert Granger.

<u>**Background**</u>

4.      On October 13, 1999, Giron drove a vehicle through the United States Border Patrol Checkpoint located on Highway 54, South of Alamogordo, New Mexico.  Officers discovered 20.9 pounds of cocaine in a false compartment near the rear bumper of the car driven by Giron.  After her arrest, Giron admitted to the agent that she had agreed to transport narcotics, that she obtained the car which was carrying the narcotics in El Paso, and that she was to deliver the car with its contents to Oklahoma City.  [Transcript of May 10, 2000 Plea Hearing, at 9.]

5.      During the criminal proceedings, Giron was appointed with and/or retained a number of attorneys.  On October 14, 1999, a federal public defender was appointed but counsel moved to withdraw due to a conflict of interest.  On October 15, 1999, Attorney Charles Harwood was appointed as counsel for Giron.

6.      On October 20, 1999, Giron filed a waiver of preliminary hearing and continuance of the grand jury presentment pending discussions with the government.   A pre-indictment plea hearing was scheduled for December 27, 1999.  However, on December 27, 1999, Harwood advised the Court that Giron had retained new counsel and that he would be withdrawing.  Giron's new counsel was to file an entry of appearance with twenty days.

7.      On January 4, 2000, Giron was indicted for the above described unlawful activity.

2

8.    On January 14, 2000, Giron was arraigned, with Attorney Harwood present. A jury trial was scheduled for March 20, 2000.

9.    On February 23, 2000, the United States requested a status conference after learning from Harwood that he no longer was able to have meaningful communications with Giron due to her assertion that her family was still in the process of retaining counsel.

10.    On February 29, 2000, Giron appeared at a status conference without counsel and stated that she had hired an attorney.

11.    On March 3, 2000, Harwood filed a motion for continuance of the trial date on the grounds that he intended to withdraw and new counsel would need time to prepare for trial.

12.    The trial was re-scheduled for April 10, 2000.

13.    On March 8, 2000, it appears that Attorney Raymond Van Arnam was appointed as counsel for Giron.

14.    On March 24, 2000, Attorney Albert Granger filed a "Motion to Allow Counsel to Enter an Appearance Pro Hac Vica."  Granger had applied for admission to the Federal Bar.  On April 4, the Court granted Granger's request.

15.    At a call of the calendar on April 5, 2000, Attorney Granger informed the Court that "most likely" the case would be a plea.  The trial date was continued until May 10, 2000, while counsel were advised to set up a plea hearing if Giron elected to plead.

16.    In early May, the Court scheduled a Change of Plea Hearing for May 10, 2000.

17.    On May 10, 2000, Giron entered a plea of guilty under Rule 11(e)(2) of the Federal Rules of Criminal Procedure.  She pled to the charge in the Indictment.  She was informed both orally and in writing that the period of imprisonment would not be less than ten years, nor more than life.

3

The written plea agreement, signed by Giron, further states that Giron recognized that the agreement already had conferred a benefit upon her and that no motion for downward departure would be appropriate.  Giron signed the plea agreement stating that she had read the agreement and carefully reviewed every part of it with her attorney, that she understood it and that she voluntarily signed it.

18.     At the plea hearing, Giron appeared with Attorney Granger.  The Court informed Giron that it first needed to ask her a series of questions to ensure that she was pleading guilty voluntarily and with an understanding of the consequences.  Giron stated at the plea hearing that she was satisfied with the performance of her attorney.  The Court made the following additional inquiries:

      Court: If you plead guilty or are found guilty, you will be required to serve 10 years
              to a maximum of life in the penitentiary.  Are you aware of that?

      Giron: Yes.

. . .

      Court: Has your attorney discussed the Sentencing Guidelines now in effect with you?

      Giron: Yes.

. . .

      Court: Finally, you understand that if you cooperate with the government and provide
              substantial assistance to investigating authorities, the Court may be permitted to
              depart downward in the guideline range?

      Giron: Yes.

      Court: Ms. Giron, has anyone threatened or tried to force you to plead guilty?

      Giron: No.

. . .

      Court: Is that your signature on the plea agreement, Ms. Giron?

4

Giron:  Yes.

Court:  Did you read that before you signed it?

Giron:  Yes.

Court:  Did you talk to your attorney about it before you signed it?

Giron:  Yes.

Court:  Do you understand that plea agreement?

Giron:  Yes, I do.

Court:  Any questions about it?

Giron:  No.

Court:  Other than what's in this plea agreement, has anyone made any promises to you?

Giron:  No.

[Transcript of May 10, 2000 Change of Plea Hearing.]

19.     Giron then pled guilty and further acknowledged that she was not making any claim of innocence with respect to the charge.  When asked if she disagreed with any of the statements provided by the government as to the underlying facts, she responded that she did not disagree with those statements.  [Id.]

20.     Giron's sentencing was scheduled for September 5, 2000.  On September 5, 2000, Granger filed a motion to continue the sentencing, stating that "Counsel for the Defendant and the Attorney for the United States . . . need additional time [to] review and discuss the application of the guidelines range."  Sentencing was re-scheduled for October 11, 2000.

21.     On October 11, 2000, Giron appeared with Granger for the sentencing.  The Court found that Giron's total offense level was 29, her criminal history category was 3, and that the

imprisonment range was from 120 to 135 months.  Granger then argued the range was quite harsh, particularly in view of Giron's circumstances.  She was young, had a small child and a very ill mother.  This was her first "serious drug offense."  The Court then inquired if Granger was making a Motion for Downward Departure and Granger stated that he was.  The Court recommended that the motion be presented in written form.  Granger further explained that the primary prosecutory assigned to the case, who was not present on October 11, had also been concerned with the harsh imprisonment range.  Granger stated that "[w]hen we first did the plea we were looking at 57 to 72 months." [Transcript of October 11, 2000 Sentencing, at 7.]

22.   The A.U.S.A. present at the October 11 sentencing suggested that Granger submit a written motion for downward departure to be reviewed by the primary prosecutor on the case so that a determination could be made as to whether the government might withdraw the plea agreement. [Id.]

23.   The Court explained that it would be difficult to envision a downward departure in view of the information in the pre-sentence report and Tenth Circuit precedent.  However, the Court inquired whether any lower sentence might be achieved through Giron's ability to cooperate with the government.  [Id., at 8.]  Granger reported that Giron was willing to give a full statement to the FBI and then requested a continuance so that her information could be evaluated.  The Court continued the sentencing.

24.   Subsequent to the October 11, 2000 hearing, relations appeared to deteriorate between Giron and Granger.  On February 12, 2001, she sent a letter to the Court requesting appointment of new counsel and stating that she had reported Granger to the New Mexico State Bar.

25.     A hearing on Giron's request to withdraw counsel was held on April 10, 2001. Granger appeared with Giron.  Apparently, Granger did not file a motion for downward departure or submit a letter detailing Giron's information to the FBI between the October 11, 2000 sentence hearing and the April 10, 2001 motion hearing.  However, Granger stated at the motion hearing that he had sent "numerous letters" to the A.U.S.A., beginning in late November 2000 "outlining what was discussed" at the sentencing in October.  Granger reached the A.U.S.A. in February 2001, and was told that some individuals would interview Giron.  The A.U.S.A. informed the Court that he was not inclined to send agents to speak with Giron at this point but that he "would have no objection if I could get some attorney proffer as to what it might be that Ms. Giron has to offer the government, if anything."  [Transcript of April 10, 2001 Motion Hearing.]  The A.U.S.A. further explained that Giron had not offered to cooperate at any time when the government believed her cooperation might have been fruitful, e.g., to make a controlled delivery of the cocaine when agents seized it.

26.     The Court recessed to allow counsel to accomplish what "[they] were unable to do over the last six months."   After the recess, the A.U.S.A. informed the Court that the proffered information had no investigatory value at the point it was being offered.  The Court advised Giron to submit a written request to have counsel withdraw so that new counsel could be appointed.

27.     At the end of the motion hearing, the A.U.S.A. argued that Granger's efforts in this matter were not deficient, but that instead, Giron simply was unhappy with the way the guidelines were written and was attempting to avoid the inevitable.

28.     On May 4, 2001, Granger withdrew as counsel, and on May 7, 2001, Attorney Roseanne Camunez was appointed.

29.     Sentencing was set for June 18, 2001; however, due to Attorney Camunez's schedule the sentencing was moved to June 25, 2001.

30.     On June 14, 2001, Giron filed a motion to withdraw her guilty plea based on her position that Granger had informed her that the guideline range was 54-72 months.  The government responded that Giron's plea was voluntary and that her request stemmed from her inability to force the government to file a 5K1.1 motion.

31.     The Court set a hearing on Giron's request for July 9, 2001, and the government moved to continue it due to counsel's availability.  The hearing was held on July 24, 2001, and Giron's request to withdraw her plea was denied.

32.     On September 10, 2001, Attorney Camunez submitted a 3-page proffer of the information Giron would provide to the government.

33.     Giron was finally sentenced on September 11, 2001.

34.     Giron did not submit a brief or affidavit with this Petition.  Her Petition states that she believed she would serve a sentence of 52 to 72 months and that she "was devastated" to learn of the 120 month sentence.  She further states that when she "went to look at my plea with my attorney . . . he told me they were taking 5 years off that it was the best thing for me to do and the most amount of time I would do was 72 months."  [Doc. 1.]

35.     The government argues that the plea agreement and plea hearing were clear as to the voluntary nature of Giron's plea.  In addition, the government asserts that Giron cannot show that, but for any errors by her attorney, she would not have pled guilty and would have insisted on proceeding to trial.

### Discussion[2]

36.     The United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984) governs the inquiry of whether an attorney's performance was ineffective.  In order to establish a claim of ineffective assistance of counsel, Giron must show both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that she was prejudiced because counsel's errors rendered the outcome of the state court's proceedings unreliable.

37.     One year after <u>Strickland</u>, the Supreme Court considered an ineffective assistance of counsel claim in the context of examining whether a guilty plea was tainted due to counsel's performance.  In <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366 (1985), "[t]he Court held that a prisoner challenging a guilty plea because of ineffective assistance of counsel satisfies the prejudice inquiry by showing that the constitutionally ineffective performance 'affected the outcome of *the plea process*.  In other words . . . that there is a reasonable probability that, but for counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial.'" <u>Miller v. Champion</u>, 262 F.3d 1066, 1072 (10th Cir. 2001) (emphasis added by Court in <u>Miller</u>), *cert. denied*, 534 U.S. 1140 (2002).  In applying this standard, Court sometimes will look to the strength of the government's case "as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial."  <u>Id.</u>

---

[2]The United States does not appear to argue that the waiver in Giron's plea agreement barred Giron's ineffective assistance of counsel claim.  In any event, the Tenth Circuit has held a plea agreement waiver of post-conviction rights does not waive the right to bring a § 2555 petition based on a claim of ineffective assistance counsel that challenges the validity of the plea.  <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001), *cert. denied*, ___ U.S. ___, 122 S.Ct. 821 (2002).  While garden variety attacks on a prisoner's sentence or on counsel's performance at sentencing, disguised as claims of ineffective assistance of counsel, may be waived, this does not appear to be the case here where Giron attacks effectiveness of counsel with respect to the negotiation of her plea.

38.     The Tenth Circuit, in <u>Miller</u>, further elaborated that a prisoner's "'mere allegation' that he would have insisted on trial but for his counsel's errors, *although necessary*, is ultimately insufficient to entitle him to relief." <u>Id.</u> (emphasis added). The prisoner need not, however, prove that there was a reasonable probability he would have prevailed at trial. <u>Id.</u> at 1074. "Of course, the 'assessment [of whether the defendant would have insisted on changing his plea] will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial,' . . . but the ultimate issue that the court has to determine is whether the defendant would have changed his plea." <u>Id.</u> at 1074-75 (*citing* <u>Hill</u>, 474 U.S. at 59).

39.     Here, Giron claims that her counsel was ineffective with respect to plea negotiations that resulted in Giron being incarcerated for ten years. She argues essentially that her plea was involuntary based on Attorney Granger's alleged communication to her that the most time she could serve would be 72 months. She contends that Granger lied to her and her family, and states that she was "devastated" to learn that she would serve 120 months. She asserts that this is not "what she signed up for." [Doc. 1.]

40.     Giron's argument, however, is belied by the record. She was advised orally and in writing that her term of imprisonment would be not less than ten years nor more than life. She was advised that the plea agreement had already conferred a benefit on her and no further downward departure would be appropriate. With this record and Giron's sworn statements at the plea hearing, her protestations about being misled are not convincing.

41.     The government argues that issues concerning the voluntariness of a plea that is the result of inaccurate advice from counsel depends on whether the attorney's advice "was within the range of competence demanded of attorneys in criminal cases." The government also contends that

10

this claim is not technically an ineffective assistance of counsel claim because "miscalculations or erroneous sentence estimation by defense counsel is not constitutionally deficient performance rising to the level of ineffective assistance of counsel." (*Citing* United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994). [Government's Response, at 5, n. 1.]  The Court construes the government's argument to be that Giron cannot satisfy the first prong of the Strickland inquiry, i.e, that she cannot prove Attorney Granger's miscalculation or estimation of her sentence was an error so serious that Granger was not functioning as counsel.

42.     It is true that a miscalculation or erroneous sentence estimation by defense counsel typically does not support a claim of ineffective assistance of counsel. Gordon, 4 F.3d at 1570. *See also* United States v. Kerns, 2002 WL 31820953 at *2 (10th Cir. Dec. 17, 2002) (rejecting petitioner's ineffective assistance of counsel claim based on argument that defendant's counsel assured him that he would receive no more than a 48 month sentence of incarceration and that the defendant would not have accepted the plea but for this assurance).  In Kerns, however, the Tenth Circuit recognized that other courts have found that some situations might suggest an involuntary guilty plea, particularly where defense counsel represents that "by prearrangement with the prosecutor or the court, a plea of guilty will not result in greater than a given punishment when, in fact, a greater punishment is imposed." Id. at *2 (citation omitted).  That type of representation by defense counsel is far different from a mere prediction by counsel as to the length of a sentence that may result from the plea agreement. Id.

43.     Here, the record is unclear as to whether an inference should be made that Giron was promised or assured that she would receive a substantially lesser sentence.  This is particularly true in view of the written plea agreement signed by Giron and her sworn responses to the Court's

inquiries.  Giron testified before the Court, during her plea hearing, that no promises were made to her, other than what was set out in the plea agreement.  If, indeed, a promise or representation was made that she would receive substantially less time, Giron could have so advised the Judge. However, she did not.  Instead, when given the opportunity to do so, Giron confirmed that no other promises or representations were made.

44.     During the October 11, 2000 sentence hearing, Attorney Granger stated that "[w]hen **we** first did the plea **we** were looking at 57 to 72 months." (emphasis added).  Giron similarly claims that  Granger "told me **they** were taking 5 years off that it was the best thing for me to do and the most amount of time I would do was 72 months."  [Doc. 1, emphasis added.]  It is unclear to whom Granger was referring when he states "we were looking at 57 to 72 months."  It could possibly refer to discussions with the government particularly in view of representations made by Granger at the sentence hearing that the prosecutor also was concerned with the harshness of the range of 120 to 135 months.  It also is uncertain when such discussions, if any, took place.  The government argues in its underlying response [doc. 56, at 2 in 00cr10] to Giron's motion to withdraw the plea that Giron rejected a pre-indictment plea, yet never clarifies what that offer was.  In addition, there was an unopposed motion for continuance filed by Granger in late 2000, stating that "Counsel for the Defendant and the Attorney for the United States . . . need additional time [to] review and discuss the application of the guidelines range."  Thus, there is support for the proposition that prior to the plea, there was some dispute or, at least, uncertainty about the guideline range.  However, whatever dispute originally existed was no longer present by the time of the plea hearing.

45.     The government argues that the Court should simply reject Giron's claim because she cannot satisfy the first prong of the <u>Strickland</u> inquiry.  The Court tends to agree, but even if the

Court could not determine whether Attorney Granger's representation of Giron fell below an objective standard of reasonableness, Giron is unable to satisfy the second prong of the <u>Strickland</u> inquiry.  The failure to satisfy either prong is fatal to her claim.  In other words, Giron has not established that, but for Granger's advice to her, there was a reasonably probability that she would not have pleaded guilty and would have insisted on going to trial.  Indeed, Giron failed to allege, at a minimum, that she would have insisted on trial but for Granger's communications to her about the period of incarceration.  The Tenth Circuit has found that even though the mere allegation that a defendant would have proceeded to trial is insufficient to entitle her to relief, that allegation is necessary.

46.     In examining the factual circumstances surrounding Giron's plea, it seems unlikely that Giron would have proceeded to trial.  This is true because Giron confessed that she had agreed to transport the drugs that were found in the vehicle she was driving.  She acknowledged that she was guilty of the crime charged in the indictment.  [Transcript of May 10, 2000 Plea Hearing, at 11.] Moreover, Giron pleaded guilty to the charge, after the Court clearly explained that she would be sentenced to a minimum of ten years imprisonment.  Thus, while Giron need not prove she would have been successful had she proceeded to trial, the strength of the prosecution's case, including her confession, make it unlikely that she would have insisted on trial, but for Attorney Granger's representations.

## **Recommended Disposition**

Therefore, the Court recommends that Giron's Petition brought under § 2255 [Doc. 1] be denied and that the case be dismissed, with prejudice.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge